**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1236n.06

No.  11-4293

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 29, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| BRIAN A . BUNNELL, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| Defendant-Appellant. | ) | DISTRICT OF OHIO |
| | ) | |

BEFORE:  SUTTON and STRANCH, Circuit Judges; STEEH, District Judge.[*]

PER CURIAM.  Brian A. Bunnell appeals the district court's judgment of conviction and sentence.

On July 12, 2010, the United States filed an information charging Bunnell with conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 371 and 1341.  The information alleged that Bunnell jointly owned and controlled a consumer buying club known as Midwest Direct that induced individuals into paying a membership fee by falsely representing that Midwest Direct could obtain merchandise for them directly from manufacturers at greatly reduced prices.  The information further alleged that, to maintain the facade of legitimacy, Midwest Direct would occasionally purchase an item from a retail store, not a manufacturer, and then sell the item at a discount to a member.  The

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

information alleged several overt acts in furtherance of the conspiracy, including, for example, that "[o]n or about August 26, 2005, Midwest Direct purchased a television for member J.S. of Berea, Ohio." Bunnell proceeded to trial, and a jury found him guilty.

The district court determined that Bunnell's base offense level was six. It added twenty levels under USSG § 2B1.1(b)(1)(K) because the amount of loss was $9.6 million, six levels under § 2B1.1(b)(2)(C) because the offense involved over 6,000 victims, and four levels for Bunnell's leadership role in the offense, resulting in a total offense level of thirty-six. Based on the total offense level of thirty-six and a criminal history category of III, Bunnell's guidelines range of imprisonment was 235 to 293 months. The statutory maximum for his offense was sixty months, however, so the district court sentenced Bunnell to sixty months in prison.

On appeal, Bunnell raises two claims of error: (1) there was insufficient evidence to support his conviction because there was no evidence that a member of the conspiracy had committed one of the overt acts alleged in the information within the five-year limitations period; and (2) the district court's sentence was procedurally unreasonable because the court calculated the number of victims and total amount of loss using erroneous information and losses occurring outside the limitations period.

Bunnell concedes that he failed to properly object to the sufficiency of the evidence during trial, but he preserved this claim by moving for judgment of acquittal on general grounds at both the end of the prosecution's case-in-chief and the close of the evidence. *See United States v. Chance*, 306 F.3d 356, 368–69 (6th Cir. 2002). In reviewing a sufficiency-of-the-evidence claim, we "view[] the evidence in the light most favorable to the prosecution and give[] the prosecution the benefit of

all reasonable inferences from the testimony." *United States v. Stewart*, 628 F.3d 246, 254–55 (6th Cir. 2010) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)) (internal quotation mark omitted). The relevant inquiry is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007)) (internal quotation mark omitted).

At trial, the prosecution presented the testimony of James Sperk, who stated that, on several occasions after becoming a member of Midwest Direct in 2004, he tried unsuccessfully to use the service to purchase discounted merchandise, including a television. According to Sperk, after he threatened to call the FBI concerning Midwest Direct's failure to provide him with the television or a refund of the purchase price, Midwest Direct arranged to have the television that he had requested delivered to him. The prosecution also introduced into evidence a receipt from an electronics retailer in Cleveland and a check issued by Midwest Direct to the retailer, both dated August 26, 2005, which was within the limitations period. This evidence demonstrated that Midwest Direct had been unable to actually obtain discounted goods directly from manufacturers as it claimed, and that it had assisted Sperk with the purchase of the television to conceal the fraudulent nature of its representations. Viewing this evidence in the light most favorable to the prosecution and drawing all reasonable inferences in favor of it, a rational trier of fact could have concluded that a member of the conspiracy committed one of the overt acts alleged in the information in furtherance of the conspiracy within the five-year limitations period. *See United States v. Schaffer*, 586 F.3d 414, 423 (6th Cir. 2009).

Bunnell also argues that the district court's sentence was procedurally unreasonable because the court calculated the number of victims and the total amount of loss using erroneous information and losses occurring outside the limitations period. We review this claim for reasonableness because Bunnell preserved it by raising it in his sentencing memorandum and during the sentencing hearing. *See United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 50–51 (2007)). "We review the district court's legal interpretations of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Poulsen*, 655 F.3d 492, 505 (6th Cir. 2011) (citation omitted), *cert. denied*, 132 S. Ct. 1772 (2012). The prosecution must establish by a preponderance of the evidence the factors supporting a sentencing enhancement. *United States v. Shields*, 664 F.3d 1040, 1043 (6th Cir. 2011).

During trial, the prosecution presented the testimony of a postal inspector who stated that, based on information contained in sales journals that had been seized from Midwest Direct, the company sold $9.6 million in memberships to over 6,000 members. Given this evidence and the lack of other evidence undermining the postal inspector's testimony, the district court did not err by imposing a twenty-level increase under § 2B1.1(b)(1)(K) based on an intended loss of $9.6 million, *see* USSG § 2B1.1, cmt. n.3(A), or by imposing a six-level increase under § 2B1.1(b)(2)(C). Further, despite Bunnell's argument to the contrary, it was not improper for the district court to include in its loss calculation the losses occurring outside the five-year limitations period. *See United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994).

Accordingly, we affirm the district court's judgment.